## THE MARY C. CONERY.

*(District Court, D. New Jersey.   1881.)*

1. DISRATING COOK—RESCISSION OF CONTRACT.

 By disrating the cook and steward, and placing him before the mast, the master rescinds his contract; and, if the rescission is accepted by the steward, he is entitled to his discharge.

Libel *in rem.*

*Beebe, Wilcox & Hobbs,* for libellant.

*Goodrich, Deady & Platt,* for claimant.

NIXON, D. J.   This case turns upon the legal effect of disrating a cook and steward, and putting him before the mast as a common seaman.

The libel alleges and the answer admits—

That the libellant shipped on board the brig Mary C. Conery, at the port of Fernandina, as cook and steward, on the first day of June, 1880, at the rate of wages of $30 per month, for a voyage, not exceeding 10 months, to Rio de Grande de Natal; thence to the West Indies, and to a port in the United States, where the voyage was to terminate; that he entered upon his duties and the vessel proceeded to Natal, where she arrived on or about the sixth day of August, and remained there until and after the thirtieth day of August, 1880.

The libel further alleges—

That while lying at the port of Natal the libellant was discharged on the thirtieth of August without any cause or provocation, and was left in a foreign port; that there was due to him at the time of the discharge the sum of $74 for wages; that he was also entitled, under the statute, to three months' extra pay, to-wit, $90; and that he has suffered damage, on account of loss of time and expenses in returning to the United States, in the sum of about $50.

The claimants, in their answer, set up as a defence—

That the libellant shipped as cook and steward, and represented that he was able and competent to perform the duties thereof; that he was not able to properly perform said duties, but was unskilful and incompetent, as cook and steward; that he repeatedly refused to obey the lawful orders of the master, and was so insulting and mutinous that on the said thirtieth day of August the master was compelled to and did disrate him, and ordered him into the forecastle to perform duty as an ordinary seaman; that upon being sent forward the libellant refused to do duty or to obey the commands of the master, and on the same day, without the permission of any of the officers, left and deserted the vessel at Natal, and never afterwards returned.

By the general maritime law, as well as by statute, (Rev. St. § 4596,) desertion is followed by the forfeiture of all wages earned.   But a

seaman's leaving the vessel without permission is not necessarily desertion. In order to constitute desertion, in the sense of the law, he must quit the ship and her service, not only without leave, but without justifiable cause, and with intent not again to return to the ship's duty. It is admitted that the libellant went without leave, but the question remains, had he justifiable cause for going? A master, doubtless, may disrate a cook and steward, if it turns out that he is incompetent to perform properly the duties of the position, and when this occurs at sea he may assign the disrated person to the performance of such services as are reasonable under the circumstances, until they reach a port. But I regard such an act by the master as an abrogation of the contract with the cook and steward, and leaves him, when a port is reached, or if the disrating takes place in port, to the option of accepting it as a discharge, or of remaining on board in his new position. If he elects the former, he is entitled to the payment of wages, according to the contract, up to the date of the disrating.

I do not find this question discussed in the books, nor did the proctors on the argument refer me to any authority touching it. But since I have reached the above conclusion on principle, I have been strengthened in its soundness by observing the case of *The Hotspur*, 3 Sawy. 194, in which Judge Deady takes the same view, and holds that the disrating of the cook and steward, and placing him before the mast, amounts in law to the rescission of the contract by the master, and the steward, accepting such rescission, may claim his discharge.

"Admitting," says the learned judge, "that the libellant was properly disrated, I think he is entitled to his discharge. By disrating him the master abrogated the contract to serve as cook and steward, as far as he is concerned. This contract being thus terminated, the master ought not to be allowed to hold the libellant to other service against his will. * * * Where the person disrated is unwilling to remain longer on board, I do not think the master has any power to compel him to remain and serve in a capacity totally different from that in which he engaged."

As the proctor for libellant, at the hearing, waived all claims for extra compensation, or for the expenses of getting back to the United States, the above view renders it unnecessary for me to consider whether the libellant was properly disrated or not. The testimony largely turned upon that question, and to justify the course of the master, a book, purporting to be his official log-book, was brought forward, which bears upon its face and internally so much proof that it was manufactured for the occasion that I ought not to let it pass without

observation. The book produced was an old printed official log of the brig, which seems to have closed in June, 1877. To the end of this three sheets of foolscap paper had been stitched, and the master had headed them with the title, "Official log of brig Mary C. Conery from Fernandina towards Natal." The first entry and date in the record is June 1, 1880, when they sailed from Fernandina, and the latest is August 30, 1880, at Natal, when the libellant left the vessel; although there are a number of entries subsequent to this, purporting to record transactions of an earlier date. The writing has the appearance upon its face of being a record made up at one time, and not at the different dates assigned, and the nature and contents of the entries themselves strikingly confirm the impression. For instance, the libellant shipped on board on the first day of June, 1880. The following is the entry of the fact:

"1880. June 1. Louis Kriete shipped as cook and steward. He recommended himself as being a first-class cook and steward. Demanded first-class wages—$30 per month. He has proved to be entirely incompetent; almost worthless; wasteful, careless, dirty, and disobedient. Will not obey my orders. Cannot make bread, nor do any kind of cooking, except boil beef and pork. Neither does he know how much or how little to cook, thereby causing a great waste of stores."

To make the log of any value as evidence in cases of this sort, the entries should be made at the time of the transactions referred to. They should, at least, have the appearance of being the result of the master's observation and knowledge at the time of the entry. Is it not quite remarkable that on the day and hour of the libellant's entrance upon the vessel the master should have learned all these facts in regard to his incompetency? But the second entry exhibits a still more wonderful prescience on the part of the master. It was made under the date of June 7th,—*six* days after the cook went on board, —and it had reference to his dilatory or lazy habits. The statement is that "it was *seven* days before he (the cook) could spare 20 minutes' time to scrub the cabin floor." But I will not pursue the subject further. I have adverted to it that the claimants may learn that I have not overlooked it, and that no court should have confidence in official logs thus made up.

As there seemed to be no dispute that the libellant was entitled, if to anything, to the sum of $74 for wages earned, a decree may be entered for that sum, unless the parties should desire a reference.